**+9IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NIGEL DEDIEECE CARTER** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| **OFFICER ROBERT J. EDWARDS, *et al.*,** | : | **No. 25-4490** |
| Defendants. | : | |

**Perez, J.** **August 19, 2026**

**OPINION**

Plaintiff Nigel Dedieece Carter brings this pro se action under 42 U.S.C. § 1983 arising from his May 28, 2021 arrest and later prosecution in the Chester County Court of Common Pleas. Carter alleges that Defendants pursued a felony charge even though, in his view, the evidence supported only misdemeanor marijuana possession; failed to correct the criminal docket after the felony charge was reduced; and, as a result, caused him to remain incarcerated until August 2023. He asserts claims for false arrest, malicious prosecution, denial of procedural due process, municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and civil conspiracy. ECF No. 2 at 3–5.

Two groups of Defendants move to dismiss. The Chester County District Attorney's Office, Assistant District Attorney Michelle Lynn Thurstlic O'Neill, and former District Attorney Deborah Ryan filed a joint motion. ECF No. 16. Officer Robert J. Edwards and the West Goshen Township Police Department filed a separate joint motion. ECF No. 20. Chester County and the Chester County Clerk of Courts answered the Complaint, ECF No. 23, and the John Doe Defendants have not appeared. This Opinion therefore addresses only the claims against the moving Defendants.

The records the Court may consider at this stage add important context to Carter's allegations. Carter was arrested on both the narcotics warrant challenged in this case and a separate warrant issued by the Pennsylvania Parole Board. The Board later recommitted him as a technical parole violator for failing to report and recalculated his maximum sentence date to October 14, 2026. The charging documents also show that the Commonwealth pursued two conspiracy charges from the outset: a felony count based on possession with intent to deliver and a misdemeanor count based on simple possession. ECF No. 20-5 at 2–5; ECF No. 20-6 at 2–3.

Against that record, the Complaint fails to state a claim against the moving Defendants. Carter's false arrest claim is untimely, the prosecutors are immune from damages for their charging and litigation decisions, and the Complaint does not plausibly allege that the challenged prosecution lacked probable cause or caused a separate deprivation of liberty beyond the parole-based custody. His remaining due process and conspiracy theories are also insufficiently pleaded. The Court will therefore grant both motions to dismiss, while permitting limited amendment only as to claims that may be capable of being cured.

## I. BACKGROUND

In March 2008, Carter pled guilty in the Chester County Court of Common Pleas to three felony counts of possession with intent to manufacture or deliver a controlled substance. The court imposed concurrent sentences resulting in an aggregate term of three to six years' imprisonment. *Commonwealth v. Carter*, No. CP-15-CR-0003134-2007 (Chester Cnty. Ct. Com. Pl.); ECF No. 20-3 at 2–4. While on parole from that sentence, Carter pled guilty in January 2012 to two additional felony counts of possession with intent to manufacture or deliver a controlled substance. The court imposed concurrent terms of six years and six months to fourteen years' imprisonment. *Commonwealth v. Carter*, No. CP-15-CR-0000411-2011 (Chester Cnty. Ct. Com. Pl.); ECF No.

20-4 at 2–4. Carter was released on parole on December 14, 2017. *Carter v. Pa. Parole Bd.*, 2024 WL 165158, at *1 (Pa. Commw. Ct. Jan. 16, 2024); ECF No. 20-5 at 2.

The events giving rise to the present prosecution occurred while Carter was on parole. On December 20, 2018, police conducted a controlled marijuana purchase in West Goshen Township. According to Officer Edwards's affidavit of probable cause, a confidential informant arranged through Snapchat to purchase marijuana from Lacieya Stevens. ECF No. 20-6 at 9. Stevens arrived at the agreed location as the passenger in a red Dodge Dart driven by Carter. *Id.* Edwards stated that he observed the informant exchange prerecorded currency with Stevens for a clear plastic bag containing green vegetable matter while Carter remained present. *Id.* He further stated that both Stevens and Carter spoke with the informant and appeared aware of the transaction. *Id.* The substance later tested positive for marijuana. *Id.* Edwards concluded from those observations that Carter and Stevens had conspired to deliver marijuana and sought a warrant for Carter's arrest. *Id.*

Officer Edwards's criminal complaint charged Carter with two conspiracy offenses: felony conspiracy to commit possession with intent to deliver and misdemeanor conspiracy to commit intentional possession of a controlled substance. ECF No. 20-6 at 5–7. The criminal information filed on June 16, 2021, likewise charged the two offenses as separate counts. *Commonwealth v. Carter*, No. CP-15-CR-0001929-2021 (Chester Cnty. Ct. Com. Pl.); ECF No. 20-6 at 2–3. The charging record therefore shows that Carter faced both a felony conspiracy charge and a misdemeanor conspiracy charge from the outset.

Separate parole proceedings were also underway by the time Carter was arrested. Carter's parole agent directed him to report to the Philadelphia District Office on February 25, 2021, but Carter did not report. *Carter*, 2024 WL 165158, at *1; ECF No. 20-5 at 2. The Parole Board

declared him delinquent on March 1, 2021, and issued a detainer warrant. *Carter*, 2024 WL 165158, at *1; ECF No. 20-5 at 2.

Carter was arrested on May 28, 2021, pursuant to both the narcotics warrant and the outstanding Parole Board warrant. *Carter*, 2024 WL 165158, at *1 n.3; ECF No. 20-5 at 2. The Board held a parole violation hearing on July 12, 2021, at which Carter and his parole agent testified about Carter's failure to report. *Carter*, 2024 WL 165158, at *1; ECF No. 20-5 at 2–3. The Board credited the agent's testimony that Carter had been told when and where to report and rejected Carter's contrary account. *Carter*, 2024 WL 165158, at *1; ECF No. 20-5 at 3. The Board recommitted Carter as a technical parole violator and recalculated the maximum date on his underlying sentence to October 14, 2026. *Carter*, 2024 WL 165158, at *1; ECF No. 20-5 at 3–4. Carter sought administrative review and then appealed to the Commonwealth Court, which affirmed the Board's decision on January 16, 2024. *Carter*, 2024 WL 165158, at *1, *4; ECF No. 20-5 at 4–5.

Carter describes the criminal prosecution differently. He alleges that his conduct in December 2018 amounted only to misdemeanor marijuana possession and did not justify a felony charge. ECF No. 2 at 3-4. He further alleges that, on November 8, 2020, he emailed Edwards, maintained his innocence, and asked that the charges be withdrawn. ECF No. 2 at 4. According to Carter, the felony charge nevertheless remained in place until May 8, 2023, when it was reduced to possession of a small amount of marijuana under 35 Pa. Stat. § 780-113(a)(31). ECF No. 2 at 3-4. Carter alleges that the Chester County Clerk of Courts then failed to update the docket to reflect that reduction, leaving the felony designation on the court record. ECF No. 2 at 3, 5. He claims that the continuing felony designation caused him to remain incarcerated until August 2023. ECF No. 2 at 3, 5.

Carter further alleges that the prosecution ended in his acquittal on all charges on August 7, 2023, after more than two years of proceedings and more than thirty court appearances. ECF No. 2 at 3–5. The Complaint does not include the final docket, verdict sheet, or other disposition record from *Commonwealth v. Carter*, No. CP-15-CR-0001929-2021. ECF No. 2 at 3–6. The moving Defendants have also not submitted a record showing the final disposition of that case. *See* ECF No. 16-1 at 2–3; ECF No. 20-1 at 2–3. The briefs state only that Carter was tried while already incarcerated on the parole violation and contend that the parole warrant and recommitment independently authorized his custody. ECF No. 16-1 at 2–3, 9–11; ECF No. 20-1 at 2–3.

Carter filed this action on August 5, 2025. ECF No. 2. He seeks more than $300,000 in compensatory damages, punitive damages, fees, and costs. *Id.* at 3–6.

## II. STANDARD OF REVIEW

A complaint survives Rule 12(b)(6) when its well-pleaded facts, accepted as true and viewed in the plaintiff's favor, state a plausible claim for relief. Legal conclusions and conclusory assertions do not receive the presumption of truth. Carter proceeds pro se, so the Court construes his pleading liberally and applies a less stringent standard than it would apply to a pleading drafted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction does not permit the Court to supply missing facts or accept unsupported conclusions. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

The Court may consider the Complaint, exhibits attached to it, matters of public record, and undisputedly authentic documents on which the claims are based without converting the motions into motions for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Documents integral to or expressly relied upon in a complaint fall within that rule. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d

Cir. 1997). Public records include criminal dockets, judicial orders and opinions, and administrative adjudications. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Federal Rule of Evidence 201 also permits judicial notice of adjudicative facts that are not reasonably disputable and can be accurately determined from sources whose accuracy cannot reasonably be questioned. Judicial notice of another proceeding establishes the existence, contents, and legal effect of its docket, judgment, or order. It does not ordinarily establish the truth of disputed factual recitations within that proceeding. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999).

The state criminal dockets, charging documents, warrant materials, Board proceedings, and Commonwealth Court decision are properly considered here. Those records establish which charges were filed, what information appeared in the warrant application, what orders were entered, and whether a parole detainer and recommitment order independently authorized Carter's custody. The Court does not accept disputed allegations in the probable cause affidavit as historical facts or resolve factual disputes concerning the actual cause of Carter's detention.

## III. DISCUSSION

### A. The District Attorney's Office and Police Department Are Not Suable Under Section 1983.

Section 1983 authorizes suit against a "person" who, acting under color of state law, deprives another person of a federal right. 42 U.S.C. § 1983. A county district attorney's office is not a judicial entity separate from the county and is not independently subject to suit under § 1983. *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997). A municipal police department is likewise an administrative arm through which the municipality performs police functions, not a separate suable entity. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

The claims against the Chester County District Attorney's Office and West Goshen Township Police Department will be dismissed with prejudice. That ruling does not dispose of the claim against Chester County, which has answered, and does not decide whether Carter could timely and plausibly state a municipal liability claim against West Goshen Township.

**B. Absolute Prosecutorial Immunity Bars the Claims Against O'Neill and Ryan.**

Prosecutors are absolutely immune from damages under § 1983 for acts intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). The analysis turns on the function performed, not the actor's title. Absolute immunity covers initiating a prosecution, selecting and grading charges, preparing charging documents, presenting the Commonwealth's case, and deciding whether to continue or dismiss a prosecution. It does not necessarily cover investigative activity, legal advice provided to police during an investigation, testimony as a complaining witness, or administrative work unrelated to advocacy. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–76 (1993); *Fogle v. Sokol*, 957 F.3d 148, 159–64 (3d Cir. 2020).

Carter challenges O'Neill's and Ryan's authorization of the criminal complaint, selection and grading of the charges, continuation of the felony count, and alleged failure to reduce that count sooner. Each challenged act involved the exercise of prosecutorial judgment in initiating or pursuing the criminal case. Those functions are protected by absolute immunity. *Imbler*, 424 U.S. at 430–31; *Weimer v. County of Fayette*, 972 F.3d 177, 189–90 (3d Cir. 2020); *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

Allegations of malice, overcharging, or insufficient evidence do not defeat that immunity. The decision to initiate a prosecution lies at the core of the prosecutor's judicial role, and immunity applies even when the prosecutor allegedly lacked a good-faith belief that wrongdoing occurred. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992). A prosecutor's conduct is evaluated

according to the function the prosecutor was performing at the time, not the prosecutor's subjective motive or whether the prosecution ultimately resulted in conviction, dismissal, or acquittal.

Carter separately alleges that the state criminal docket was not promptly corrected after the felony charge was reduced. The Complaint alleges that the Chester County Clerk of Courts was responsible for maintaining the docket; it identifies no comparable role by O'Neill or Ryan. Carter does not allege that either prosecutor maintained the docket, directed the Clerk's entries, received notice that an ordered correction had not been made, or had authority to alter the court's official records. The Complaint does not allege that O'Neill or Ryan *personally* took any non-prosecutorial action.

The individual capacity damages claims against O'Neill and Ryan will be dismissed with prejudice to the extent they arise from charging, grading, pursuing, or litigating the criminal case. Any official capacity claims are treated as claims against Chester County and are redundant of the claims brought against the County, which is already named as a Defendant. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The County did not move to dismiss, so the sufficiency of the claim against it is not before the Court.

**C. Carter's False Arrest Claim Is Untimely**

Pennsylvania provides a two-year limitations period for Carter's § 1983 claims. 42 Pa. Cons. Stat. § 5524(1), (2). A false arrest claim concerns detention without legal process. Once the plaintiff is held pursuant to judicial process—such as when he is bound over for trial or arraigned—the false arrest ends and the limitations period begins to run. *Wallace v. Kato*, 549 U.S. 384, 389–92 (2007). Any unlawful detention after that point is not part of the false arrest claim merely because the criminal prosecution remains pending. *Id.*

Carter was arrested on May 28, 2021. ECF No. 20-5 at 2. By June 16, 2021, the Commonwealth had filed a criminal information against him in the Court of Common Pleas. ECF No. 20-6 at 2–3. Under Pennsylvania procedure, an information is filed after the defendant's case has been held for court following the preliminary stage. Pa. R. Crim. P. 560(A). Thus, by June 2021 at the latest, Carter was being held pursuant to judicial process, and any false arrest claim had accrued. Carter did not file this action until August 5, 2025, more than four years later. ECF No. 2. His allegation that the prosecution continued until August 2023 does not extend the limitations period for false arrest; that later period concerns detention pursuant to legal process, not the initial arrest challenged in Count I. *See Wallace*, 549 U.S. at 389–92. The Complaint alleges no facts supporting statutory or equitable tolling. Count I is therefore untimely and will be dismissed with prejudice.

**D. Carter Does Not Plausibly Allege an Unlawful Arrest.**

The false arrest claim also fails on the merits. A false arrest claim asks whether the officers had lawful grounds to take the plaintiff into custody at the time of the arrest; it does not require probable cause for every offense associated with that arrest. In *Rivera-Guadalupe v. City of Harrisburg*, the Third Circuit recently reaffirmed that "the any-crime rule of *Wright* governs claims for false arrest." 124 F.4th 295, 307–08 (3d Cir. 2024). Under that rule, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Id.* at 300 (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)). Thus, when probable cause supports at least one offense for which the plaintiff could lawfully have been arrested, the arrest itself does not violate the Fourth Amendment merely because another contemporaneous charge lacked probable cause.

The Third Circuit explained that this rule reflects the limited inquiry presented by a false arrest claim. False arrest concerns the initial seizure—what the court described as detention before legal process—whereas malicious prosecution concerns the distinct restraints that may follow once criminal proceedings have begun. *Rivera-Guadalupe*, 124 F.4th at 307–08. For that reason, probable cause for one offense can defeat a false arrest claim even though it does not necessarily defeat a malicious prosecution claim based on a different, unsupported charge. *Id.*

Carter's false arrest claim therefore turns on whether there was a lawful basis to arrest him on May 28, 2021, not on whether every criminal charge later pursued against him was independently supported by probable cause. As discussed below, the record identifies two bases for the arrest: the preexisting Parole Board warrant and the narcotics warrant obtained by Edwards.

*The Parole Board Warrant.* Carter was subject to an outstanding Parole Board warrant when he was arrested on May 28, 2021. Carter v. Pa. Parole Bd., 2024 WL 165158, at *1 n.3 (Pa. Commw. Ct. Jan. 16, 2024); ECF No. 20-5 at 2. The Board had issued the warrant after declaring Carter delinquent for failing to report as directed. Carter, 2024 WL 165158, at *1; ECF No. 20-5 at 2. Carter does not allege that the Board warrant was invalid when officers executed it. That warrant therefore supplied an independent lawful basis to take Carter into custody, apart from the narcotics charges he challenges in this action.

*The narcotics warrant.* While the issuance of a warrant does not conclusively establish probable cause, Carter must plausibly identify a defect that would undermine the warrant. When the challenge rests on information supplied by the affiant, the plaintiff must allege that the officer knowingly or recklessly included a material falsehood or omitted material information and that the corrected affidavit would no longer establish probable cause. *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000).

Carter alleges no such defect. His assertion that he maintained his innocence and asked Edwards to withdraw the charges does not identify anything false or misleading in the warrant application. ECF No. 2 at 4. Edwards's affidavit instead described conduct from which the issuing judicial officer could infer Carter's knowing participation in the controlled marijuana transaction. According to Edwards, Carter drove Stevens to the arranged transaction, remained with her during the exchange, and interacted with the confidential informant in a manner indicating awareness of what was occurring. ECF No. 20-6 at 9. Those allegations need not establish guilt beyond a reasonable doubt; probable cause requires only a fair probability that criminal activity occurred. See *Dempsey v. Bucknell University*, 834 F.3d 457, 467 (3d Cir. 2016).

Carter does not allege that Edwards fabricated those observations or knowingly or recklessly withheld information that would have defeated probable cause. His contention that the evidence justified only a misdemeanor rather than a felony concerns the grading of the charges, not whether every lawful basis for the arrest was absent. Under the any-crime rule, that distinction cannot sustain a false arrest claim. The Complaint therefore does not plausibly allege that the May 28, 2021 arrest was unlawful.

**E. Carter Does Not State a Malicious Prosecution Claim Against the Moving Defendants.**

A Fourth Amendment malicious prosecution claim requires Carter to allege, among other things, that Defendants initiated criminal proceedings without probable cause, that the proceedings terminated in his favor, and that the prosecution caused a deprivation of liberty consistent with a seizure. *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022); *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–64 (2024). The Court addresses favorable termination, probable cause, and causation in turn.

**1. Carter Adequately Pleads Favorable Termination**

Carter alleges that the criminal case ended in his acquittal on all charges on August 7, 2023. ECF No. 2 at 3-5. A prosecution terminates favorably when it ends without a conviction, and an acquittal plainly satisfies that requirement. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Although Defendants submitted charging records from the underlying prosecution, neither set of Defendants produced a final docket, verdict sheet, or other disposition record contradicting Carter's allegation. The Commonwealth Court's parole decision likewise addresses only Carter's parole recommitment, not the disposition of the later criminal charges. Nothing properly before the Court therefore undermines Carter's allegation that the prosecution ended in acquittal. The Court will treat favorable termination as adequately pleaded.

**2. The Complaint Does Not Plausibly Allege That the Felony Conspiracy Charge Lacked Probable Cause**

The charging record shows that Carter faced two conspiracy charges from the outset. Edwards's criminal complaint charged felony conspiracy to commit possession with intent to deliver and misdemeanor conspiracy to commit intentional possession of a controlled substance, and the criminal information later carried both offenses forward as separate counts. ECF No. 20-6 at 2–3, 5–7. That distinction matters. In *Chiaverini*, the Supreme Court held that probable cause supporting one criminal charge does not automatically defeat a malicious prosecution claim based on a separate charge that lacked probable cause. 602 U.S. at 561–64. Carter may therefore challenge the felony conspiracy charge even if probable cause existed for the misdemeanor charge. He still must plausibly allege, however, that the felony charge itself lacked probable cause.

As previously explained in connection with the false arrest claim, Carter does not allege that Edwards obtained the narcotics warrant through a material falsehood or omission. *See Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000). The narrower question here is whether the

information presented to the issuing judicial officer supplied probable cause for the felony conspiracy charge. The Court finds that it did.

Edwards's affidavit described Carter as driving Stevens to the arranged marijuana transaction, remaining present during the exchange, and interacting with the confidential informant in a manner that Edwards understood to demonstrate awareness of the transaction. ECF No. 20-6 at 9. Taken as the information presented to the issuing judicial officer, those allegations supported an inference that Carter knowingly participated in an agreement to deliver marijuana rather than merely being present when the transaction occurred. Probable cause requires a fair probability of criminal activity, not proof sufficient to establish guilt beyond a reasonable doubt. *See Dempsey v. Bucknell University*, 834 F.3d 457, 467 (3d Cir. 2016).

Carter's allegation that the evidence ultimately supported only a misdemeanor does not identify facts showing that probable cause for the felony charge was absent when the prosecution began. Nor do the alleged later reduction of the charge and ultimate acquittal retroactively undermine probable cause. *See Merkle v. Upper Dublin School District*, 211 F.3d 782, 789 (3d Cir. 2000); *Wright v. City of Philadelphia*, 409 F.3d 595, 602–03 (3d Cir. 2005). The Complaint therefore does not plausibly allege that the felony conspiracy charge lacked probable cause.

**3. Carter Does Not Plausibly Allege That the Felony Charge Caused a Distinct Seizure.**

Carter's malicious prosecution claim has a separate causation problem. Even when a particular charge lacks probable cause, a Fourth Amendment malicious prosecution claim requires that the unsupported charge cause a seizure. *Chiaverini*, 602 U.S. at 564. An invalid charge may satisfy that requirement if it causes detention to begin or prolongs detention that otherwise would have ended. *Id.* at 562–64.

The Third Circuit applied that principle in *Curry v. Yachera*, 835 F.3d 373 (3d Cir. 2016). There, Curry was jailed after he could not post bail on charges brought by one officer. *Id.* at 380. While Curry was jailed on the original charges, a detective filed separate, unrelated theft charges against him. Those charges were dismissed about two months later, but Curry remained incarcerated on the original case. *Id.* at 380–81. The Third Circuit held that the detective did not cause a new seizure because the additional charges neither initiated Curry's confinement nor prolonged it: Curry was already in custody when the charges were filed and remained in custody after they were dismissed. *Id.* The court did not hold that an incarcerated person can never suffer a new seizure. Rather, it required some additional restraint on liberty attributable to the later charges themselves.

Here, Carter was arrested on the narcotics warrant and the preexisting Parole Board warrant. The Board later recommitted him based on the failure-to-report violation and calculated a maximum sentence date extending to October 14, 2026. Those records establish an independent legal basis for custody.

Carter alleges that the felony designation kept him incarcerated through August 2023, but the Complaint does not explain *how*. Carter fails to identify any ruling that denied release because of the felony charge, no parole decision that relied on the allegedly inaccurate docket entry, and no period of confinement that would have ended absent that charge. The allegation that the felony designation caused his continued incarceration is therefore conclusory and does not plausibly connect the challenged charge to an additional deprivation of liberty.

The October 14, 2026 parole maximum date does not, by itself, establish that the criminal case had no effect on Carter's actual release and the Court does not treat the parole record as conclusively resolving causation. At the same time, Carter must allege facts showing that the

felony charge imposed some additional restraint on his liberty. He has not done so. His assertion that the felony designation caused his continued incarceration, without facts connecting that designation to any decision or period of confinement, is insufficient.

**4. Officer Edwards Is Entitled to Qualified Immunity.**

There is an independent reason Carter cannot recover damages from Edwards on his charge-specific theory. Qualified immunity protects an officer unless the constitutional right at issue was clearly established when the officer acted. *Pearson v. Callahan*, 555 U.S. 223, 231–36 (2009).

The conduct alleged here occurred in 2021, before *Chiaverini* established that probable cause for one charge does not automatically defeat a malicious prosecution claim based on another charge. The Third Circuit has since explained that this charge-specific rule was not clearly established before *Chiaverini* because the appellate courts were divided on the issue. *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303–07 (3d Cir. 2024). Edwards therefore could not be held personally liable in 2021 merely for pursuing an allegedly unsupported felony charge alongside another charge supported by probable cause.

That immunity does not protect an officer who knowingly or recklessly obtains a warrant through material false information or omissions. *Wilson*, 212 F.3d at 786–87. Carter, however, has not alleged such a defect. Count II will therefore be dismissed against Edwards. Carter may amend only if he can plausibly allege a material falsehood or omission that would eliminate probable cause and a distinct seizure caused by the challenged prosecution. The malicious prosecution claims against O'Neill and Ryan will be dismissed with prejudice under absolute prosecutorial immunity.

**F. Count III Does Not State a Procedural Due Process Claim**

Count III alleges that Defendants deprived Carter of due process in connection with his prosecution and continued confinement. To state a procedural due process claim, Carter must allege that he was deprived of a protected liberty or property interest without constitutionally adequate procedures. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

To the extent Count III challenges Carter's arrest, prosecution, or detention on charges allegedly unsupported by probable cause, it duplicates his Fourth Amendment claims. When a specific constitutional provision directly governs the challenged conduct, that provision—not the more general guarantee of due process—supplies the constitutional standard. *Albright v. Oliver*, 510 U.S. 266, 271–75 (1994); *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Carter therefore cannot state a separate procedural due process claim by recasting his Fourth Amendment allegations in due process terms.

Carter's allegation concerning the criminal docket presents a distinct theory. He alleges that, after the felony charge was reduced, the Clerk of Courts failed to update the docket, leaving the felony designation in place and contributing to his continued confinement. ECF No. 2 at 3, 5. That allegation does not state a claim against any moving Defendant. Section 1983 imposes liability only for a defendant's own involvement in the alleged constitutional violation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). The Complaint assigns responsibility for maintaining the docket to the Clerk of Courts. It does not allege that Edwards controlled the court docket or that O'Neill or Ryan caused the allegedly inaccurate entry to remain after the charge was reduced.

The Complaint also does not allege intentional conduct by a moving Defendant sufficient to transform the asserted docketing error into a constitutional deprivation. Mere carelessness by a state official does not implicate the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986). Carter does not allege that any moving Defendant deliberately altered the docket, intentionally refused to implement a court order, or otherwise deprived him of available process.

Count III therefore fails against the moving Defendants. To the extent it merely restates Carter's Fourth Amendment claims or rests on protected prosecutorial conduct, dismissal will be with prejudice. Carter may amend only if he can allege a distinct non-prosecutorial act by a particular moving Defendant that deprived him of a protected interest without constitutionally adequate process. The Court expresses no view on the sufficiency of Count III against Chester County or the Clerk of Courts, neither of whom moved to dismiss.

**G. The Municipal Liability Claim Against Chester County Is Not Before the Court.**

Count IV, municipal liability, is expressly asserted against Chester County. The County answered rather than moved to dismiss. ECF No. 23. The Court therefore does not decide that claim on the present motions.

A municipality is not liable under § 1983 merely because it employed a constitutional tortfeasor. Municipal liability requires an official policy, a settled custom, or an act of a final policymaker that was the moving force behind a constitutional injury. *Monell*, 436 U.S. at 690-94; *Hill*, 455 F.3d at 245. Those principles may govern later proceedings against Chester County, but they do not supply a basis to adjudicate Count IV now.

To the extent Carter intended to assert a separate municipal liability claim against West Goshen Township through its Police Department, the Police Department is not the proper defendant. The Complaint also identifies no Township policy, custom, failure-to-train practice, or

final policymaker. Any proposed amendment naming the Township must satisfy Rule 15, the statute of limitations, and the substantive requirements of *Monell*.

**H. The Complaint Does Not Plausibly Allege a Civil Conspiracy.**

A § 1983 conspiracy requires an agreement or meeting of the minds to deprive the plaintiff of a federal right, concerted action in furtherance of the agreement, and an actual constitutional deprivation. An agreement may be inferred from circumstances, but parallel conduct and conclusory assertions of conspiracy are insufficient. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–96 (3d Cir. 2018); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010).

Carter identifies no communication, meeting, shared plan, approximate date of agreement, or coordinated act among Officer Edwards, the prosecutors, and the Clerk. Participation by different officials at different stages of a criminal case does not support a reasonable inference of an agreement to violate constitutional rights. The Complaint also fails to state an underlying constitutional violation against the moving Defendants.

Count V will be dismissed. The claim against O'Neill and Ryan is dismissed with prejudice to the extent the alleged agreement consists of protected charging or litigation decisions; conspiracy terminology cannot circumvent absolute immunity. The claim against Edwards is dismissed without prejudice. Any amended conspiracy claim must identify a viable underlying constitutional violation and particularized facts supporting an actual agreement.

**I. Carter's Emotional Distress Allegations Describe Damages, Not Separate Tort Claims.**

The prosecutorial Defendants construe Carter's allegations of trauma and anxiety as asserting Pennsylvania claims for intentional or negligent infliction of emotional distress. The

Complaint does not identify either tort as a separate count. The Court therefore treats those allegations as a description of damages, not independent causes of action.

A different construction would not change the result. The Complaint does not allege extreme and outrageous conduct, a physical manifestation of severe distress, a duty supporting negligence liability, or other facts necessary to state either tort against the moving Defendants. No separate emotional distress claim survives the motions.

### J. *Heck* Bars Any Direct Challenge to the Validity of Carter's Parole Recommitment.

Carter's challenge to the 2021 prosecution must be distinguished from a challenge to the Board's recommitment decision. *Heck v. Humphrey* bars a § 1983 damages claim when success would necessarily imply the invalidity of an outstanding conviction, sentence, or decision determining the duration of confinement, unless that decision has been reversed, expunged, or otherwise invalidated. 512 U.S. 477 (1994). This rule applies to parole-revocation and parole-denial decisions. *Williams v. Consovoy*, 453 F.3d 173, 177–78 (3d Cir. 2006). A plaintiff may not use § 1983 to establish that a parole board lacked grounds to recommit him or unlawfully extended his sentence while the Board's order remains valid.

Here, the Commonwealth Court affirmed Carter's recommitment, and the submitted records do not show that the Board's decision has been invalidated. Accordingly, Carter cannot recover damages on a theory that the Board lacked lawful authority to confine him, miscalculated his maximum date, or was required to release him notwithstanding the recommitment order.

*Heck* does not bar every claim concerning the later prosecution. A claim that an unsupported charge caused a separate period of detention or an additional restraint could be resolved without invalidating the parole decision. Carter may amend only based on theories that do not directly challenge the validity or duration of the parole recommitment.

**K. Limited Leave to Amend Is Appropriate.**

A pro se plaintiff ordinarily receives leave to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108–14 (3d Cir. 2002).

Amendment would be futile as to all claims against the Chester County District Attorney's Office and West Goshen Township Police Department. Amendment would also be futile as to the untimely false arrest claim, the damages claims against O'Neill and Ryan based on charging or prosecutorial functions, and Carter's theory that Officer Edwards violated a clearly established right merely by pursuing a felony charge alongside a supported misdemeanor charge before *Chiaverini*. Those claims will be dismissed with prejudice.

Limited amendment may not be futile as to three theories: a malicious prosecution claim against Edwards based on specifically identified deliberate or reckless material falsehoods or omissions in the warrant and an incremental seizure; a distinct procedural due process claim based on a particular moving Defendant's intentional, non-prosecutorial conduct; and a conspiracy claim against Edwards supported by a viable underlying violation and facts showing an actual agreement. Any theory that necessarily attacks the validity or duration of the parole recommitment is dismissed without prejudice under *Heck*. The claims against Chester County and the Chester County Clerk of Courts remain unaffected.

**IV. CONCLUSION**

The Court will grant the motions to dismiss at ECF Nos. 16 and 20. The claims against the Chester County District Attorney's Office and West Goshen Township Police Department, the false arrest claim, and the claims against O'Neill and Ryan arising from prosecutorial functions are dismissed with prejudice. Counts II, III, and V are dismissed against Edwards with the limited leave to amend described above. Any direct challenge to the validity or duration of the parole

recommitment is dismissed without prejudice. The claims against Chester County and the Chester County Clerk of Courts remain pending.